Sharon L. RUSSO, Appellant,

v.

SMITH INTERNATIONAL,
INC., Appellee.

No. 14–01–00203–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 3, 2002.

Rehearing Overruled Nov. 7, 2002.

---

Timothy A. Hootman, Houston, for appellants.

Holly H. Williamson, Stefanie Robin Moll, Houston, for appellees.

Timothy A. Hootman, for Sharon L. Russo.

Holly H. Williamson and Stefanie Robin Moll, for Smith International, Inc.

Panel consists of Justices YATES, SEYMORE, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

This is an employment discrimination case. Appellant Sharon Russo ("Russo") brought suit against Smith International, Inc. ("Smith"), alleging age-related employment discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA").[1] Without specifying its grounds, the trial court granted summary judgment in favor of Smith. We affirm.

## I. BACKGROUND

Smith, an oil field services and equipment manufacturing company, consists of several business units. In 1998, Smith merged two of its drilling bit units, Smith GeoDiamond and Smith Tool, creating the newly consolidated business entity Smith

---

1. *See* TEX. LAB.CODE ANN. § 21.001 *et seq.* Initially, Russo also asserted claims for gender discrimination and breach of contract. Russo has abandoned all but her age-related claims on appeal.

Bits.[2] At the time of the merger, the oil-field service business faced a decline and Smith suffered losses to its business as a result of the industry-wide downturn.

Shortly after the merger, Smith appointed Michael Van Hook to the position of Area Manager and Wayne Miller to Houston Division District Manager. At the instruction of Van Hook, Miller evaluated the job duties and compensation of Smith employees that he supervised in the Houston District. Miller included Russo's position and compensation in this review. Russo's job title at the time of her review was Technical Sales Application Specialist. She had worked at Smith since 1977. According to Smith, the inquiry revealed a disparity between Russo's job responsibilities and her title and salary. In September 1998, Smith eliminated Russo's position of Technical Sales Application Specialist and reassigned her to a lower-paying Well Program Specialist position.

In the months following Russo's reassignment, Smith continued to face declining sales and revenues. As a result, Smith terminated Russo and approximately two thousand other employees during a company-wide force reduction. Russo was 53 years old at the time of her termination. As part of the reduction in force, Smith assigned Russo's job responsibilities to various positions, including members of its existing sales force, a clerk, and the position of Technical Sales Representative. John Wolfe, an employee in his early thirties, filled the Technical Sales Representative position. Claiming that age discrimination motivated the demotion and subsequent termination, Russo filed suit alleging that Smith acted in violation of the TCHRA. The trial court granted Smith's motion for summary judgment.

In three points of error, Russo contends: (1) the trial court erred in granting appellee's motion for summary judgment; (2) there was evidence that Smith intended to discriminate against her on the basis of her age; and (3) there was evidence rebutting Smith's articulated legitimate and nondiscriminatory reasons for Russo's termination.[3]

We overrule her points of error.

## II. STANDARD OF REVIEW

Smith moved for summary judgment under rules 166a and 166a(i) of the Texas Rules of Civil Procedure.[4] To prevail on a traditional motion for summary judgment

---

2. For the purpose of simplicity, we refer to both Smith Bits and Smith International, Inc. as "Smith."

3. Russo does not articulate her points of error in the exact verbiage set forth in *McDonnell Douglas Corp. v. Green* and its progeny, though it is apparent from her brief that she attempts to do so by citing the relevant cases and paraphrasing the particular tests to be employed. 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

4. Like the employer defendant in *Waldmiller v. Continental Express, Inc.*, Smith references both the no-evidence and the traditional summary judgment rules in its motion without clearly distinguishing between the evidence, arguments, and authorities supporting each. 74 S.W.3d 116, 122–23 (Tex.App.-Texarkana 2002, no pet.). While remarking that the rules do not prohibit such hybrid motions, the *Waldmiller* court cautioned litigants to "file two separate motions, one containing the no-evidence summary judgment and one containing the ordinary summary judgment, or to file one document containing both motions but with the arguments and authorities for each clearly delineated and separate from one another." *Id.; see also Torres v. City of Waco,* 51 S.W.3d 814, 822 n. 7 (Tex.App.-Waco 2001, no pet.) ("We have concluded that both traditional and 'no-evidence' summary judgment claims can be raised in a single pleading so long as the pleading sufficiently segregates the traditional claims from the no-evidence claims.")

under rule 166a, the party moving for summary judgment carries the burden of establishing that no material fact issue exists on the challenged elements and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a; *M.D. Anderson Hosp. and Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). The "no-evidence" motion for summary judgment shifts the burden of proof to the non-movant to produce evidence raising a genuine issue of material fact on the contested issue on which the non-movant would bear the burden of proof at trial. *See* TEX.R. CIV. P. 166a(i). As this court observed:

> Such a motion asserts there is no evidence of one or more essential elements of claims upon which the opposing party would have the burden of proof at trial. Unlike a movant for traditional summary judgment, a movant for a no-evidence summary judgment does not bear the burden of establishing a right to judgment by proving each claim or defense. A no-evidence summary judgment is essentially a pretrial directed verdict, to which we apply the same legal sufficiency standard of review. A no-evidence summary judgment is properly granted if the non-movant fails to produce more than a scintilla of probative evidence raising a genuine issue of fact as to an essential element of a claim on which the non-movant would have the burden of proof at trial.

*Lake Charles Harbor and Terminal Dist. v. Bd. of Trustees of Galveston Wharves*, 62 S.W.3d 237, 241 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citations omitted). To defeat a "no-evidence" summary judgment motion, the non-movant need not marshal its proof but should only identify more than a scintilla of evidence raising a fact issue on the challenged elements. *See* TEX.R. CIV. P. 166(i) cmt. A non-movant puts forth less than a mere scintilla of evidence when that which is

proffered is "so weak as to do no more than create a mere surmise or suspicion"— the effect being that there is no evidence offered. *Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614, 619 (Tex.App.-Eastland 2000, pet. denied).

## III. DISCUSSION

### A. TEXAS LAW AND THE *McDONNELL DOUGLAS* MINUET

Like its federal counterpart, the TCHRA expressly prohibits employment discrimination with respect to race, color, disability, religion, sex, national origin, or age. TEX. LAB.CODE ANN. § 21.051. The Texas Legislature envisioned that the TCHRA would provide for "the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Id.* § 21.001(1); *see also Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) ("What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.") Accordingly, Texas state courts follow analogous federal statutes and cases interpreting them to guide our reading of TCHRA. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex.2001). Section 21.051 of TCHRA provides:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB.CODE ANN. § 21.051.

In *McDonnell Douglas Corp. v. Green,* the Supreme Court allocated the burden of production and ordered the presentation of proof in employment discrimination cases. 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Texas courts invoke *McDonnell Douglas* in employment discrimination cases brought under state law. *See Quantum,* 47 S.W.3d at 476; *M.D. Anderson Hosp.,* 28 S.W.3d at 24; *Waldmiller v. Continental Express, Inc.,* 74 S.W.3d 116, 122–23 (Tex.App.-Texarkana 2002, no pet.).

■ The U.S. Supreme Court has summarized the allocation of proof in employment discrimination cases as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quotations and citations omitted); *see also Quantum,* 47 S.W.3d at 476 (applying McDonnell Douglas in TCHRA age discrimination case). Because direct evidence of discrimination is a rarity in employment cases, Russo puts forth only *circumstantial* evidence that Smith violated the TCHRA. *See Tyler v. Union Oil Co. of California,* 304 F.3d 379, 393 (5th Cir.2002) ("The McDonnell Douglas evidentiary framework is primarily concerned with the plaintiff's initial burden when attempting to prove discrimination by circumstantial evidence.") Thus, without direct evidence of discrimination, this case merits the McDonnell Douglas "pretext" analysis. *Quantum,* 47 S.W.3d at 476.[5]

### B. RUSSO'S PRIMA FACIE CASE

Where, as here, the plaintiff asserts age discrimination claims based on two separate and distinct incidents, she must establish a prima facie case for each independently.[6] The establishment of the prima

---

**5.** Federal courts allocate the various burdens depending on whether the plaintiff presents direct or circumstantial evidence of discrimination. While courts invoke the "pretext" model when the plaintiff presents circumstantial evidence, they use the "mixed motive" model when the plaintiff brings forth direct evidence. When a plaintiff produces direct evidence of the employer's discriminatory intent, the employer must then produce evidence sufficient to show that it would have made the same decision if illegal bias had played no role in the employment decision. *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1096 n. 4 (3d Cir.1995). Under this "mixed motive" model, the employer does not escape liability altogether; rather the employer earns only an affirmative defense on the question of "but for" cause or cause in fact. *Id.* (noting the interplay of Supreme Court opinions and 1991 Congressional amendments to the Civil Rights Act in this context). In fact, the *McDonnell Douglas* minuet is simply "inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

**6.** Smith argues that Russo limits her appeal to the claim that Smith discriminated against her when it eliminated her position in 1999. Russo vigorously disputes this assertion. The

facie case is a "condition precedent" to the pretext analysis. *See Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 741 (7th Cir.2002). We consider separately the 1998 demotion and the 1999 termination. Russo need only make a minimal showing to establish her prima facie case. *See Gold v. Exxon Corp.*, 960 S.W.2d 378, 382 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *see also Burdine*, 450 U.S. at 253, 101 S.Ct. 1089 (noting that the plaintiff's burden at this stage is "not onerous").

### 1. The Demotion

■■■ In employment discrimination cases based on circumstantial evidence, the plaintiff's prima facie case relates to the employee's burden of presenting evidence that raises an inference of discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002). A prima facie case of age discrimination requires proof that the plaintiff (1) is a member of a protected class; (2) was discharged; (3) was qualified for the position from which she was discharged; and (4) was either replaced by someone outside the protected class, replaced by someone younger, or was otherwise discharged because of her age. *See Baker v. Gregg County*, 33 S.W.3d 72, 80 (Tex.App.-Texarkana 2000, pet. dism'd).

■■■ As Russo was fifty-three years old at the time of her reassignment and subsequent termination, she clearly falls within the relevant protected class, thereby meeting the first element of the prima facie case. *See* Tex. Lab.Code Ann. § 21.101 (limiting protection against age discrimination under the TCHRA to individuals who are forty years of age or older); *cf.* 29 U.S.C. § 631(a) (Age Discrimination in Employment Act protects individuals who are at least forty years of age). Smith's 1998 decision to demote Russo constituted an adverse employment action akin to discharge, as it was a cut in base pay not offset by an increase in some other form of compensation. *See Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Thus, she meets the second required element. Because Smith contends Russo limits her challenge of the summary judgment solely to the 1999 termination, it does not challenge the elements of her prima facie case on the *demotion claim*. From the summary judgment evidence in the record, we find that the plaintiff met all of the elements of her prima facie case on the demotion claim.

### 2. The Termination Pursuant to a Reduction in Force

Turning to Russo's prima facie case for the reduction in force claim, Russo satisfies the first element because she remains in the protected class. We also assume without deciding that her 1999 termination was an adverse employment action for the purposes of her prima facie case. *Contra LaGrant v. Gulf and Western Mfg. Co.*, 748 F.2d 1087, 1090 (6th Cir.1984) ("The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a *prima facie* case of age discrimination.") (emphasis added).

■■■ Though Russo argues that Wolfe replaced her, Smith contends it negated the replacement element of Russo's prima facie case (and alternatively, that she pres-

Texas Rules of Appellate Procedure instruct us to construe briefing rules liberally. *See* Tex R.App. P. 38.9. In her initial appellate brief, Russo averred that her 1998 job title change was motivated by improper age discrimination, thereby rescuing the claim from waiver. In that same document, she also lists both the initial demotion and the termination as adverse employment actions.

ents no evidence) because the company redistributed her duties pursuant to a reorganization and no single, younger employee assumed a position similar to that which she previously held. In the context of age discrimination, a terminated employee is replaced by another person when the terminated employee's position is filled by that person and said person is assigned the terminated employee's former job duties. *See Baker*, 33 S.W.3d at 81. In a similar case, the Texarkana Court of Appeals wrote:

> [A] terminated employee is not replaced by a person who temporarily assumes the terminated employee's job duties or a person who only takes over a part of those duties. When a terminated employee's job duties are distributed among other employees after termination, those employees do not replace the terminated employee.

*Id.* at 81–82. Smith assigned Russo's job responsibilities to various employees, including Wolfe, who took the job of Technical Sales Representative. On that basis, Smith argues that it has proven as a matter of law that Russo was not replaced and, alternatively, that Russo has provided no evidence of replacement.

■ However, because plaintiffs in reduction in force cases are laid off and oftentimes unable to prove the replacement element of the *McDonnell Douglas* minuet, the Fifth Circuit has modified the test in cases involving a general reduction in the employer's workforce. *See Williams v. Gen. Motors Corp.*, 656 F.2d 120, 127–28 (5th Cir. Unit B Sept.1981); *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 813 (5th Cir.1991) (elaborating upon the special *Williams* prima facie case standard in reduction in force cases); *Eugene v. Rumsfeld*, 168 F.Supp.2d 655, 668 (S.D.Tex.2001); *compare Rose v. Wells Fargo & Co.*, 902 F.2d

1417, 1421 (9th Cir.1990) ("We have held that the failure to prove replacement by a younger employee is 'not necessarily fatal' to an age discrimination claim where the discharge results from a general reduction in the work force due to business conditions."). In such cases, the fourth prong of the prima facie case is altered to require the plaintiff to produce "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Williams*, 656 F.2d at 129; *Eugene*, 168 F.Supp.2d at 668; *cf. Brown v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir.1996) ("We note, however, that the 'reduction in force' standard applies only when a company lays off protected individuals, while retaining younger employees in *similar* positions.") (emphasis in original). Thus, under this altered standard, Russo need not necessarily establish the replacement element, as it appears that she—a protected class employee—was laid off while Wolfe—a younger employee in a similar position—was retained.

■ Though not necessarily required by the modified *Williams* standard, Russo claims she was *replaced* by Wolfe, a younger man, and that she was qualified to perform the duties of a Technical Sales Representative. Were we to analyze this case without reference to the *Williams* standard, the touchstone for determining whether Russo's lay-off might constitute impermissible age discrimination is the similarity of the jobs held by the protected class employee and the younger employee. *Burger v. New York Inst. of Tech.*, 94 F.3d 830, 833 (2d Cir.1996) (comparing duties of non-protected employees with similar, though not identical, job functions and titles to those of the protected class employees). Prior to Russo's termination, Miller issued a document to Theiss and Van Hook stating that due to a workforce reduction,

the Houston District would have to eliminate one Well Program Specialist and one Technical Sales Representative. The document then listed the job responsibilities as follows:

Well Program Specialist

1. Prepare well program to meet District requirements.

2. Meet customer bit record requests and maintain bit record file.

3. Assist other district office personnel as required.

Technical Sales Representative

1. Account management of external customers specific to the Houston District area.

2. Rig site supervision capability of all products.

3. Assist in Field sales and service requirements

4. Presentation of well programs to customers

5. Coordination and preparation of District well program requirements.

6. Meet bit record requests and maintain bit record files.

7. Coordination and distribution of district well drilling permits and report.

8. Produce recommendations for "outside Districts" program requirements of Houston District customers.

9. Assist other district office and field personnel as required.

Responsibilities five and six above were noted by Miller in a January 1999 memorandum as a consolidation of responsibilities resulting from the work force reduction. Smith offered evidence that Wolfe not only assumed Russo's duties, but also took the responsibilities of Ken Langston, another terminated employee. In addition, the Technical Sales Representative position required experience in field supervision and the ability to replace vacation-

ing field workers. Russo did not have such experience. In his affidavit, Van Hook notes that unlike Wolfe, Russo had never lived at a rig site and never monitored or supervised the drilling of a well—attributes he considered important in the 1999 decision regarding the Technical Sales Representative position, as it included sales and field support.

However, as noted above, the burden on the plaintiff at this stage is not onerous. Considering the relative ease with which a plaintiff meets the prima facie case under this framework, and coupling that with the *Williams* exception to be applied in reduction in force cases, we assume *arguendo* that Russo has established the required elements at this stage of the *McDonnell Douglas* analysis. See, e.g., Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir.1996) (assuming *arguendo* that plaintiff terminated pursuant to reduction in force met the prima facie case required of federal age discrimination case). We cannot say that Russo has produced no genuine issue of material fact at this stage, nor can we conclude that she has put forth less than a mere scintilla of evidence. Having met the aforementioned elements, Russo earns a transitory presumption of discrimination which the employer is now called upon to rebut. See Costa v. Desert Palace, Inc., 299 F.3d 838, 855 (9th Cir. 2002).

### C. SMITH'S ARTICULATED NONDISCRIMINATORY REASONS

As Russo has met the elements of her prima facie case, the burden now shifts to Smith to articulate legitimate nondiscriminatory reasons for both Russo's demotion and termination. See Quantum, 47 S.W.3d at 477. The burden is one of production only, not persuasion. See Reeves v. Sanderson Plumbing Prods., Inc., 530

U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In promulgating its nondiscriminatory reason, the employer quickly and easily rebuts the presumption of discrimination, which summarily drops from the case. *See Costa,* 299 F.3d at 855; *see also Pilditch v. Bd. of Educ. of the City of Chicago,* 3 F.3d 1113, 1117 (7th Cir.1993) ("[T]he employer need not persuade the court that he was actually motivated by the reason he gives and the mere articulation of the reason rebuts the prima facie case and puts the onus back on the plaintiff to prove pretext."). Smith proffered the following nondiscriminatory reasons for Russo's reassignment and her subsequent termination: (1) Smith eliminated Russo's job because of a reorganization brought about by the consolidation of two business units and reassigned her to a lower-paying position more in line with her experience; and (2) Smith subsequently terminated Russo's employment due to a company-wide reduction in force brought about by declining sales and revenues.

Like the employer defendant in *Gallo v. Prudential Residential Servs.,* Smith presented affidavits accompanying its motion establishing that when it terminated Russo the company faced great economic difficulties and that a reduction in force was necessary to meet its budgetary goals. 22 F.3d 1219, 1226 (2d Cir.1994). In his affidavit, Theiss remarked upon Smith's dependence on the level of drilling activity occurring in the market—when drilling decreases, the need for personnel decreases. Theiss noted that from January 20, 1998 through January 21, 1999, fifty-three employees were laid off pursuant to a company-wide reduction in force, and that twenty-eight of these employees were laid off in the Smiths Bits unit in January of 1999 alone. So hampered by decline was the industry during this period that Smith laid off more than 2000 employees internationally. In his affidavit, Van Hook stated that during his tenure at Smith he had seen several reductions in force brought about by similar declines in drilling and rig activity, which in turn affected Smith's employment needs. Van Hook noted that by January 1999 sales in the Houston District had dropped more than 45 percent and profits more than 198 percent. He stated that in all, the industry downturn required him to reduce his Texas Gulf Coast area personnel by twenty percent.

■■■ A reduction in force is a legitimate, nondiscriminatory reason for an employee's termination. *Nichols,* 81 F.3d at 41. Smith's production of these legitimate nondiscriminatory reason eliminates the presumption of discrimination created by the plaintiff's prima facie showing. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *Quantum,* 47 S.W.3d at 477. Under the *McDonnell Douglas* framework, the burden now shifts back to Russo to call into question Smith's articulated reasons.

### D. ESTABLISHING PRETEXT FOR DISCRIMINATION

■■■ In its unanimous opinion in *Reeves,* the U.S. Supreme Court clarified that when the plaintiff offers proof that the employer's articulated reasons are false, the dispute must then be submitted to a jury to decide. 530 U.S. at 144–46, 120 S.Ct. 2097. Under *Reeves,* the plaintiff shows pretext by introducing evidence proving the reasons stated by the employer, were not its true reasons, but were a pretext for discrimination or that said reasons were unworthy of credence. 530 U.S. at 143, 120 S.Ct. 2097. In the summary judgment setting, however, the plaintiff need not prove pretext but merely establish a genuine issue of material fact on the matter. *See Amburgey,* 936 F.2d at 813. Summary judgment will be improper if the plaintiff makes a prima facie case and pro-

duces sufficient evidence for a jury to *disbelieve* the employer's stated reason for discharge. *See Reeves*, 530 U.S. at 146–48, 120 S.Ct. 2097. However, the Court did state that "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 148, 120 S.Ct. 2097. Thus, we analyze this step of the *McDonnell Douglas* inquiry in light of *Reeves*.

### 1. The Demotion

■ Smith claims it eliminated Russo's job as a Technical Sales Application Specialist and subsequently reassigned her because of a company-wide reorganization brought about by the consolidation of two business units into a singular entity. In so doing, Smith claims, it created a position that reflected a title, salary, and grade level in line with Russo's duties of sales support. An e-mail from Miller to Van Hook dated September 9, 1998, indicates that Smith's intention was to reorganize by reassigning Russo's supervisory and other duties to different groups within the merged organization.

Russo offers Theiss's notes taken during the September 11, 1998, meeting at which the decision to offer Russo the Well Program Specialist position was made. Under Russo's name, Theiss wrote: "Hired 9/9/77, 21 yrs." and "Married, 53 yrs." Next to Wolfe's name, Theiss noted that Wolfe was approximately thirty-years-old. The notes mention other employees, including Jerry Star (listed as sixty-six years old), Davey Cruzan (listed as approximately thirty years old), and Ryan Mushinski (no age listed).

■ For an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without inferences or presumptions that age was an impermissible factor in the decision to terminate the employee. *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir.1993). The value of such remarks is dependent upon the content of the remarks and the speaker. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir.2000). As Theiss swore in his affidavit filed with Smith's motion for summary judgment, the references to age in the notes are consistent with a human resources manager's role in ensuring that employment decisions conform with the law. Theiss's references to age, standing alone, do not support an inference of discrimination. *Compare Russell*, 235 F.3d at 226 (finding remarks constituted appropriate circumstantial evidence of age discrimination because of content indicating age animus). Because a jury reading Theiss's notes would be required to presume age factored into the termination decision, the notes are no evidence of discriminatory intent.

Although Russo makes a prima facie case, she did not produce sufficient evidence for a jury to disbelieve the employer's stated reason for discharge. Likewise, she has failed to raise a genuine issue of material fact on the issue. Accordingly, we hold that the trial court did not err in granting summary judgment as to Russo's demotion.

### 2. The Termination Pursuant to a Reduction in Force

■ Although Smith is certainly entitled to reduce its force and structurally reorganize its operations to maximize efficiency in response to economic woes or otherwise, an employer may not intention-

ally discriminate against an employee because of her age. *Gallo,* 22 F.3d at 1225. Smith offered proof to show it terminated Russo's employment because declining sales mandated a company-wide reduction of its workforce. Its proof indicates its revenues and profitability are proportional to the level of exploration and production activity. From 1997 through 1999, drilling activity declined steeply, forcing Smith to reduce its expenses and eliminate over 2,000 positions.

■■■■■ To show pretext in a reduction in force case, an employee must establish that an improper motive "tipped the balance" in favor of termination. *Krchnavy v. Limagrain Genetics Corp.,* 294 F.3d 871, 876 (7th Cir.2002). Bald assertions of impermissible age discrimination are insufficient to establish pretext. *See Amburgey,* 936 F.2d at 814. Russo failed to provide any evidence from which one could reasonably conclude the reduction in force was anything but bona-fide. She relies on much of the same evidence at this stage as she did for the demotion claim: (1) the e-mails sent among managers outlining the decisions made regarding her employment; (2) Theiss's notes; (3) a memo Russo received in September offering her a choice between reassignment or a severance package; and (4) her subjective belief that she was qualified to perform the job of Technical Sales Representative. None of these documents contain evidence sufficient to rebut the employer's articulated reason for the termination, nor do they raise a genuine issue of material fact on the matter. We agree with Smith that the e-mails do little more than evaluate the reclassifications of Russo and Langston's positions. Again, Theiss's notes are merely an employer's attempt to ascertain which employees fall within the protected class. Russo's subjective beliefs are insufficient to overcome Smith's summary judgment evidence. *See M.D. Anderson Hosp.,* 28 S.W.3d at 24.

■■■■ Russo also argues that she was more qualified than Wolfe, the employee she claims replaced her. In her brief, Russo claims that Wolfe's 1999 performance evaluation—when compared to the affidavit of her own supervisor, David Cudd—illustrate that Wolfe was "less experienced" than she. She does not elaborate upon this claim in her brief. Noting that he interfaced weekly with Russo over a number of years, Cudd deems Russo to be an employee of the "highest caliber." Cudd left the employ of Smith in 1998 and did not mention anything in his affidavit about the events in 1999. In the entirety of his affidavit, Cudd does not mention Wolfe. Thus, his affidavit is not helpful in comparing Russo's qualifications to those of Wolfe—who took the position the year following Cudd's departure from the company. Additionally, Russo's qualifications as to the position of Well Program Specialist are not dispositive as to her qualifications for the position of Technical Sales Representative—the position Wolfe filled.

■■■■ To rebut Smith's nondiscriminatory reasons, Russo must show she was "clearly better qualified" than the younger employees who were retained. *See Nichols,* 81 F.3d at 42. The evidence of relative qualifications must be more than merely subjective and speculative. *Id.* It must be specific and comparative in nature. *Bodenheimer,* 5 F.3d at 959. Russo has presented this court only with her disagreement with Smith's decision—not evidence that she was more qualified than Wolfe for the Technical Sales Representative position. *See Waggoner v. City of Garland,* 987 F.2d 1160, 1165 (5th Cir. 1993) ("The ADEA was not intended to be a vehicle for judicial second-guessing of business decisions, nor was it intended to

transform the courts into personnel managers.").

Here, the record supports Smith's contention that its reduction in force was necessitated by the downturn in the industry. In her deposition, even Russo acknowledged that rig counts were down in 1998, that Smith's revenues were down, and that these changes made her job less secure.[7] Internationally, 2,000 Smith employees lost their jobs. Russo failed to rebut Smith's nondiscriminatory reason for her termination. *See Anderson v. Taylor Pub. Co.,* 13 S.W.3d 56, 59–60 (Tex.App.-Dallas 2000, pet. denied); *cf. Bowen v. El Paso Elec. Co.,* 49 S.W.3d 902, 909–911 (Tex.App.-El Paso 2001, pet. denied). As the plaintiff has not produced sufficient evidence for a jury to disbelieve the employer's stated reasons, the trial court properly granted summary judgment in favor of Smith on the termination claim. *See Reeves,* 530 U.S. at 148, 120 S.Ct. 2097.

## IV. CONCLUSION

Russo presented no evidence sufficient to rebut the legitimate non-discriminatory reasons offered by Smith on both the demotion and termination claims. Accordingly, we hold that the trial court did not err in granting Smith's motion for summary judgment. We overrule Russo's points of error.

The judgment of the trial court is affirmed.

---

**7.** Russo testified that "everybody" was concerned about the impact declining sales might have on their jobs at Smith.